Herman WOHL and Bertha Wohl, Plaintiffs,

v.

BLAIR & CO. Inc., Martin Kalkstein and Fred Kalkstein, Defendants.

Sam SCHARAGA and Ellen Scharaga, Plaintiffs,

v.

BLAIR & CO. Inc., Martin Kalkstein and Fred Kalkstein, Defendants.

Nos. 69 Civ. 3187, 3188.

United States District Court, S. D. New York.

March 26, 1970.

---

Dale A. Schreiber, White Plains, for plaintiffs.

Mudge, Rose, Guthrie & Alexander, New York City, for defendants; Gerard A. Dupuis, New York City, of counsel.

MANSFIELD, District Judge.

In these two suits for damages pursuant to §§ 6, 10(b) and 19 of the Securities Exchange Act by two stockholders and their wives against a broker-dealer (Blair & Co., Inc.) and its two registered representatives (Martin Kalkstein and Fred Kalkstein), claiming fraud in connection with the purchase and sale of stock of R. Hoe & Co. ("Hoe"), plaintiffs move to strike affirmative defenses interposed by defendants which plead that plaintiffs are barred from recovery for the reason that they are "*in pari delicto*" and have "unclean hands." For the reasons stated below the motions are denied.

The complaints allege that plaintiffs, who maintained trading accounts with Blair, were fraudulently induced to purchase Hoe common stock, and to retain Hoe shares previously purchased, by false representations on the part of the Kalksteins to the effect that defendants had "inside information * * * concerning Hoe," including information as to its prospective earnings, its employees' working hours, its backlog of orders, and its plans for expansion, as a result of which plaintiffs suffered losses of approximately $80,000 in the case of

the Scharagas and $65,000 in the case of the Wohls.

Defendants' answer denies the essential allegations of fraud and further alleges by way of affirmative defenses, in the alternative, that plaintiffs, as purchasers on the basis of "inside information" who did not reveal such information to their vendors, are barred from recovery because they are *in pari delicto* with defendants and have unclean hands.

Plaintiffs' motion is grounded on their contention that the affirmative defenses do not apply to a relationship between a broker-dealer and his customers, at least in the absence of allegations (1) that the parties were in fact insiders or that the parties did in fact possess "inside information," and (2) that plaintiffs participated in the wrongful use of inside information. Thus the issue is whether a person who buys stock on the basis of inside information from his broker may be denied recovery from his broker when it turns out that the latter actually did not have such inside information.

 The legal question thus raised by the affirmative defenses is not an easy one to resolve. Certainly it is not of the frivolous or outlandish variety that usually is the basis for granting a motion to strike. Such motions are not viewed favorably, the general policy being against denying a party the opportunity to support his contention in more depth at trial. Tivoli Realty v. Paramount Pictures, 80 F.Supp. 800, 803 (D.Del.1948); Maschmeijer v. Ingram, 97 F.Supp. 639 (S.D.N.Y.1951); Garlock v. New York Tree Savers, Inc., 199 F.Supp. 59 (W.D.N.Y.1961); South Side Drive-In Co. v. Warner Bros. Pictures Dist. Corp., 30 F.R.D. 32 (E.D.Pa.1952). In ruling upon a motion to strike we view the pleading under attack most favorably to the pleader, McCormick v. Wood, 156 F.Supp. 483 (S.D.N.Y.1957), and preclude resort to extraneous matter of the type offered in movants' support-

ing affidavit. Lopez v. Resort Airlines, 18 F.R.D. 37, 40 (S.D.N.Y.1955); Seacoast Liquor Distributors, Inc. v. Kips Bay Brewing Co., Inc., 8 F.R.D. 74 (S.D. N.Y.1947); Brew, Woltman & Co., Inc. v. Anthony, 94 F.Supp. 955 (S.D.N.Y. 1951); United States v. Arnhold and S. Bleichroeder, Inc., et al., 96 F.Supp. 240, 243 (S.D.N.Y.1951). Unless the pleading is obviously insufficient as a matter of law, or the severity of the prejudice outweighs the materiality of the allegation, it will not be stricken.

 The affirmative defenses here in effect ask for a determination as to the balance that is to be struck between two different policies inherent in the antifraud provisions of our federal securities acts. The first of these policies is that of full disclosure by a securities dealer who recommends a transaction, which imposes a duty upon him to have an adequate basis for the recommendation and to disclose to his customer, toward whom he acts in the position of a fiduciary, all facts known or reasonably ascertainable pertaining to the customer's purchase. Hanly v. SEC, 415 F.2d 589 (2d Cir. 1969). It is the violation of this duty that forms the basis of the present suit. On the other hand, there is also a strong policy against taking advantage of "inside information" regarding a corporation's affairs as the basis for private gain realized through trading in the securities of that corporation. SEC v. Texas Gulf Sulphur, 401 F.2d 833, 848 (2d Cir. 1968), cert. denied sub nom. Coates v. SEC, 394 U.S. 976, 89 S. Ct. 1454, 22 L.Ed.2d 756 (1969); Ross v. Licht, 263 F.Supp. 395 (S.D.N.Y. 1967).

 Plaintiffs here forthrightly recognize that the Fifth Circuit Court of Appeals, in Kuehnert v. Texstar Corp., et al., 412 F.2d 700 (5th Cir. 1969), recently held that a "tippee" who received purported inside information from the corporation's president (which turned out to be false) was precluded from recovery on the grounds of *"in pari delic-*

*to*" and "unclean hands." Indeed, that decision may well have been the inspiration for defendants' assertion here of the same affirmative defenses. Plaintiffs seek to distinguish *Kuehnert* on the ground that the plaintiff there was in fact an "insider" or "tippee" because he received his false inside information directly from the president of the corporation, whereas plaintiffs here received it indirectly through the Kalksteins who had in fact been in communication with the president of Hoe.

We are not persuaded by the attempted distinction. Regardless of the various technical definitions of "tippee," "insider," and "inside information,"[1] the fact remains that Kuehnert, like plaintiffs here, claimed he was fraudulently induced to purchase stock of the corporation on the basis of what he erroneously believed to be "inside information." Presumably plaintiffs here, like Kuehnert, will contend that the "inside" nature of the information was a substantial factor in leading them to purchase or hold the Hoe stock, and that they probably would not have done so if the information had been represented as being publicly available. The issue presented here, therefore, is essentially the same as that posed in *Kuehnert*, i.e., whether the anti-"inside information" policy precludes recovery for fraud. This was answered by the Fifth Circuit Court of Appeals as follows:

"In the first place, we are not convinced of any difference in substance between a successful fraud and an attempt. The statutory phrase 'any manipulative or deceptive device,' 15 U. S.C. § 78j(b), seems broad enough to encompass conduct irrespective of its outcome. * * * The absence of actual harm to his vendors, as far as Kuehnert was concerned, was a pure fortuity. * * * In determining whether a plaintiff's hands were unclean equity has customarily looked to intent. * * * Although Kuehnert is not seeking equitable relief the doctrine remains applicable, since it expresses a general principle equally suited to damage actions. * * * The tippee should be encouraged to disclose, before trading, what he believes on a reasonable basis to be true, because disclosure allows the free market to probe and evaluate his information, accepting what is true and discrediting what is false. Indeed, had Kuehnert fulfilled his statutory obligations here, it is likely that Rhame whould have been immediately exposed and Kuehnert saved from any appreciable harm.

"Although Kuehnert's status as a tippee makes the defenses of unclean hands and *in pari delicto* available, their application rests with the discretion of the court. * * * " (412 F.2d 700, 704)

We are also not impressed by plaintiffs' further argument that extension of the *Kuehnert* holding would erode or destroy the effectiveness of the anti-fraud statutes by enabling brokers to feel free to defraud their customers with impunity as long as they couch their fraudulent representations in terms of "inside information." As long as there are customers eagerly looking

1. See SEC v. Texas Gulf Sulphur Co., 258 F.Supp. 262, 279 (S.D.N.Y.1966) and 401 F.2d 833, 848 (2d Cir. 1968); In re Cady Roberts & Co., 40 S.E.C. 907 (1961); Ross v. Licht, 263 F.Supp. 395, 409 (S.D.N.Y.1967).

 "Further, since Section 10(b) applies to 'any person' it can include 'insiders' who are not officers, directors or major stockholders. Cady, Roberts & Co., supra, at 912." (SEC v. Texas Gulf Sulphur Co., 258 F.Supp. 262, 279 (S.D.N.Y.1966))

 "Insiders, as directors or management officers are, of course, by this Rule [10b–5] precluded from so unfairly dealing, but the Rule is also applicable to one possessing the information who may not be strictly termed an 'insider' within the meaning of Sec. 16(b) of the Act." (SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 848 (2d Cir. 1968))

for "tips" based on "inside information," there will be registered representatives playing to their desire to make a profit at the expense of someone not equally informed. Without condoning the conduct of any such broker-dealers, it may well be that much of the excessive and inflationary speculation in securities is attributable to customers seeking information which they are not entitled to have unless and until it is freely available to all. One possible solution may be the adoption of a form of *"caveat tippee"* policy. If such customers learn that they accept "inside information" at their own risk, many may decide that it is better to reject proffers of such information and to play the game according to the laws and SEC rules enacted for their protection than to risk loss of their hard-earned capital.

> "If a tippee can sue he has, in effect, an enforceable warranty that secret information is true. It is then he that [sic] will have free rein. If what he is told is false, he can recover against his informer. If it is true, he will, of course, be liable to his vendors or vendees, but here he may well be protected by the difficulties of discovery. It may be relatively easy to trace insiders; tippees are another matter." (412 F.2d 700, 705 (5th Cir. 1969)).

Accordingly, while the availability of such equitable defenses in private suits to enforce federal securities laws is not free from doubt, cf. Perma-Life Mufflers Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968) (unavailability in treble damage antitrust suits) with Gaudiosi v. Mellon, 269 F.2d 873, 882 (3d Cir.), cert. denied, 361 U.S. 902, 80 S.Ct. 211, 4 L. Ed.2d 157 (1959), we believe that the defenses should not be stricken, since they raise serious and substantial legal issues which should be more fully explored before being finally resolved.

The motion is denied.

It is so ordered.