MOVIE SYSTEMS, INC., Appellee,

v.

Edward P. HELLER, III, Appellant.

No. 82-2408.

United States Court of Appeals,
Eighth Circuit.

Submitted March 16, 1983.
Decided June 30, 1983.
Rehearing Denied Aug. 5, 1983.

Edward P. Heller, III, pro se.

Thomas A. Keller, III, Robert A. Brunig, O'Connor & Hannan, Minneapolis, Minn., for appellee.

Before ROSS and JOHN R. GIBSON, Circuit Judges, and ROBERTS,* District Judge.

ROSS, Circuit Judge.

This is an appeal by Edward P. Heller, III (Heller) from a summary judgment enjoining him from intercepting television entertainment programing from Movie Systems, Inc. (MSI) without paying the subscription fee. Jurisdiction of the district court [1] was based on 28 U.S.C. § 1332. Jurisdiction of this court is based on an appeal from a final judgment under 28 U.S.C. § 1291. We affirm the judgment of the district court.

*Background*

In April 1981, Heller installed special equipment, including a microwave antenna and a downconverter, in his home with which to receive television entertainment programing produced by Home Box Office, Inc. (HBO). At that time, the programing was distributed by Twin Cities Home Theatre, Inc. (Twin Cities). In February 1982, Movie Systems, Inc. (MSI) purchased the right to distribute HBO programing in the Minneapolis/St. Paul metropolitan area from Twin Cities.

HBO granted an exclusive license to MSI to distribute its programing by multipoint distribution service (MDS).[2] HBO programing is produced in New York and is transmitted by satellite to a receiver atop the IDS Center in Minneapolis. From the IDS Center, Microband Corp.[3] transmits the programing by MDS to MSI's subscribers. This high frequency signal cannot be received by conventional television sets without the installation of special equipment. A microwave antenna is necessary to receive the high frequency MDS signal and a downconverter is required to convert the signal to a lower frequency which can be received by a conventional television set.

MSI pays HBO for the programing and pays Microband for its distribution service. MSI charges its subscribers a monthly fee for receipt of the entertainment programing. Generally, MSI installs an antenna and a downconverter for the subscribers and collects an installation fee and a refundable deposit. In some instances, where a subscriber owns the equipment, MSI requires the subscriber to maintain the equipment pursuant to MSI's directions.

---

* The Honorable Ross T. Roberts, United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

2. The multipoint distribution service consists of an omnidirectional microwave signal.

3. Microband Corp. is a common carrier licensed by the Federal Communication Commission to transmit television programing.

Heller installed his own antenna and downconverter and used the equipment to receive MSI's entertainment programing. Heller did not become a subscriber. In July 1982, MSI detected Heller's interception of its signals and informed him of his obligation to pay the monthly subscription fee. When Heller refused to subscribe, MSI brought this action on July 19, 1982. The district court granted MSI's request for a preliminary injunction on July 20, 1982. On October 21, 1982, the district court, ruling on cross motions for summary judgment, permanently enjoined Heller from intercepting MSI's transmissions of television entertainment programing without MSI's consent. The district court also dismissed Heller's counterclaims. Heller appeals from the district court's judgment.

*Summary judgment*

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). This court, on review of a grant of a summary judgment, is required to "view the record in the light most favorable to the party opposing the motion. While this court cannot decide disputed issues of material fact, it may determine whether a genuine issue exists and whether the law was applied correctly." *Kuehn v. Garcia,* 608 F.2d 1143, 1146 (8th Cir.1979), *cert. denied,* 445 U.S. 943, 100 S.Ct. 1340, 63 L.Ed.2d 777 (1980) (citations omitted).

■ The district court granted summary judgment in favor of MSI on the basis of its finding that Heller violated 47 U.S.C. § 605 (1982)[4] which provides in pertinent part: "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use

such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."[5] The statute provides, however, that its prohibitions "shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is broadcast or transmitted by amateurs or others *for the use of the general public.*" (Emphasis added.)

Heller argues that section 605 is inapplicable. Heller maintains MSI's broadcast is for the use of the general public because the entertainment programing has mass public appeal. Caselaw, however, does not support this contention. Courts have held that for the purposes of section 605, the crucial factor in determining whether the programing is broadcasting for the use of the general public is not whether the content of the program has mass appeal or mass availability but rather, whether it was *intended* for the use of the general public. *Chartwell Communications Group v. Westbrook,* 637 F.2d 459, 465 (6th Cir.1980); *see also National Subscription Television v. S & H TV,* 644 F.2d 820, 823–25 (9th Cir.1981) (signal intended solely for use by subscribers). As the Sixth Circuit stated:

We think there is an important distinction between making a service available to the general public and intending a program for the use of the general public. The whole point of STV [subscription television] is to provide the service to as many members of the public as are interested. If the services could not be widely distributed there would be no business. However, the dual nature of STV is that while it may be available to the general public, it is intended for the exclusive use of paying subscribers. Availability and use are separate concepts. The subscription service in KMLA [*Broadcast. Corp. v. Twentieth Century Cig. Vend. Corp.,* 264

---

4. An aggrieved party has a private cause of action under 47 U.S.C. § 605 for injuries arising from a violation of that section. *See, e.g., National Subscription Television v. S & H TV,* 644 F.2d 820, 821 n. 1 (9th Cir.1981); *Chartwell Communications Group v. Westbrook,* 637 F.2d 459, 466 & n. 5 (6th Cir.1980).

5. Heller admitted that he has received MSI's signals and HBO programing without paying the monthly subscription fee.

F.Supp. 35 (C.D.Cal.1967)] was available to anyone who wanted it, but it was intended only for paying subscribers and was, therefore, not broadcasting. *Chartwell Communications Group v. Westbrook, supra,* 637 F.2d at 465.[6]

■ Although the content of HBO programing "may be of interest to the general public, access to that programing cannot be gained with traditional television sets." *United States v. Westbrook,* 502 F.Supp. 588, 591 (E.D.Mich.1980). The MDS microwave signal operates at such a high frequency that the signal cannot be received without the use of special equipment such as the microwave antenna and the downconverter. We hold that the MDS transmissions are not broadcasting for the use of the general public and thus section 605 prohibits unauthorized interception of the MDS signal. *Accord American Television v. Western Techtronics,* 529 F.Supp. 617, 620 (D.Colo.1982).[7] Further, we find that Heller's conduct violated section 605.

Heller argues that this court should adopt the holding in *Orth-O-Vision, Inc. v. Home Box Office,* 474 F.Supp. 672 (S.D.N.Y.1979) that section 605 did not protect unauthorized interception of MDS transmissions. We note that the only two circuit courts to have addressed this question have expressly rejected the reasoning in *Orth-O-Vision. National Subscription Television v. S & H TV, supra,* 644 F.2d at 824; *Chartwell Communications Group v. Westbrook, supra,* 637 F.2d at 465–66 and n. 4. We decline to follow *Orth-O-Vision* because of that court's emphasis on the mass appeal of the program content in determining whether the MDS system engaged in broadcasting. *Orth-O-Vision, Inc. v. Home Box Office, supra,* 474 F.Supp. at 682 n. 10.

We affirm the judgment of the district court finding ·that Heller violated section 605 and enjoining Heller from intercepting MSI's signal without authorization from MSI.[8]

*Affirmative defense*

■ Heller argues that MSI is barred from bringing this action because Twin Cities, MSI's predecessor, had failed to sue to enjoin homeowners' reception of Twin Cities' programing. Heller contends MSI is bound by Twin Cities' decision not to file suit against unlawful interceptors. This contention is based on the equitable doctrines of estoppel, waiver, acquiescence and laches. The district court found no merit in this argument.

Heller concedes that MSI did not enter the Minneapolis/St. Paul market until February 1982 and announced its intention to serve single-family residences within a month thereafter. At that time, MSI informed Heller that it considered his interception of its programing without payment of the fee to be unlawful. The fact that MSI is not seeking past payment but only the value of present services coupled with the fact that Heller refused to submit the subscription fee even after being notified that his conduct was unlawful persuades us that the district court correctly rejected Heller's equitable defenses.

---

**6.** Heller contends the definition of broadcasting included in 47 U.S.C. § 153(*o*) controls for purposes of section 605. We reject that argument based on the analysis of that issue in *National Subscription Television v. S & H TV, supra,* 644 F.2d at 823–24, wherein the court held that section 153(*o*) does not control the *proviso* in section 605.

**7.** Heller maintains that MSI is required to scramble its signal in order to protect its transmissions under section 605. Heller cites no case which distinguishes between a scrambled and unscrambled signal. One court has held that requiring the scrambling of the signal would be a futile act. Decoders, as well as antennas and downconverters are publicly available. *American Television v. Western Techtronics,* 529 F.Supp. 617, 621 (D.Colo. 1982). We agree with the district court in the present case that section 605 does not require a signal to be scrambled in order for it to be protected under that section 605.

**8.** Heller contends that he has a first amendment right of access to the airways which has been abridged by the application of section 605 to his actions. However, a review of the record reveals that this issue was not raised in the district court and therefore, we decline to address it on appeal. *See Lewis v. U.S. Marine Corps,* 674 F.2d 714, 717 (8th Cir.1982).

*Heller's counterclaims*

In addition to his challenge of the applicability of section 605, Heller raises two counterclaims. First, Heller contends that MSI's method of detecting his unauthorized interception of HBO programing violates the fourth and fourteenth amendments and constitutes an invasion of privacy in violation of state law. Second, Heller alleges MSI's conduct violates antitrust laws.

 Heller alleged that MSI used electronic equipment installed in a van to detect signals from his microwave antenna to determine whether Heller was intercepting HBO programing. Taking this allegation as true for purposes of a summary judgment, the district court held that Heller had no cause of action under either federal or state law. We agree. Heller's constitutional claim is without merit because the constitutional prohibitions of the fourth and fourteenth amendments do not apply to actions by private persons. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 349, 95 S.Ct. 449, 452, 42 L.Ed.2d 477 (1974). Heller has alleged no facts nor does the record reveal any facts which would support a finding of state action. Heller's section 1983 claim fails for the similar reason that the activity complained of was not taken "under color of state law." *Wallach v. Cannon,* 357 F.2d 557, 561 (8th Cir.1966). Finally, Heller's privacy claim fails under state law for the reason that "Minnesota has never recognized, either by legislative or court action, a cause of action for invasion of privacy, even though many other states have done so." *Hendry v. Conner,* 303 Minn. 317, 226 N.W.2d 921, 923 (Minn. 1975).[9]

Heller asserts that MSI's requirement that receiving equipment owned by a subscriber be "installed, maintained and operated pursuant to the carrier's instruction and control" constitutes illegal tying under antitrust laws. The district court found no merit in the antitrust claim because MSI did not require Heller to purchase an antenna and downconverter and the control requirement has been mandated by the FCC. 47 C.F.R. § 21.903(b)(4)(iii) (1982). We affirm the district court's dismissal of this counterclaim as meritless.

Judgment of the district court is affirmed.

---

**9.** Heller filed a motion with this court to certify to the Minnesota Supreme Court the question of whether "it is a tort in Minnesota for a private party to use electronic surveillance of a private home * * * to determine what the homeowner is watching on his television set." Although this court has held that a question may be certified at the appellate level, we declined to certify this issue because we were not without guidance from the state courts on the issue and the case is primarily based on federal law. *See Hatfield v. Bishop Clarkson Mem. Hosp.,* 701 F.2d 1266 (8th Cir.1983).