**Robert CIMINELLI d/b/a Smithtown Electronics, Smithtown Electronic, Inc., Plaintiffs,**

v.

**CABLEVISION, Brookhaven Cable TV Service, Inc., Viacom Cablevision of Long Island, Inc., Huntington Cable, Inc.; Group W. Cable Corp.; Cox Cable New York, Inc.; Adams Russell Cable Vision Nassau, Inc.; Long Island Cable TV Counsel; Newsday Channel; Newsday, Inc., Defendants.**

No. CV–83–2494.

United States District Court, E.D. New York.

March 28, 1984.

Young & DeWitt, West Babylon, N.Y., for plaintiffs.

Sullivan & Cromwell, by Michael A. Cooper, Yvonne S. Quinn, New York City, Jo-

seph F. Carlino, ·P.C. by Joseph F. Carlino, Mineola, N.Y., for defendant Cablevision.

Pelletreau & Pelletreau, Patchogue, N.Y., for defendant Brookhaven, Cable TV Service, Inc.

Hughes, Hubbard & Reed, New York City, for defendant, Viacom Cablevision of Long Island.

Toaz, Buck, Myers, Bernst, Young & Cote, Huntington, N.Y., for defendant Huntington TV Cable Corp.

Weil, Gotshal & Manges, by R. Bruce Rich, Robert F. Brodegard, New York City, for defendants, Newsday, Inc., Newsday Channel and Group W. Cable Corp.

Peirez, Ackerman & Levine by John M. Brickman, Great Neck, N.Y., Dow, Lohnes & Albertson, Washington, D.C., for defendant, Cox Cable N.Y., Inc.

Joshua Noah Koenig, Albany, N.Y., for Long Island, Cable TV Council.

Choate, Hall & Stewart, Boston, Mass., for defendant, Adams Russell Cablevision-Nassau, Inc.

## MEMORANDUM AND ORDER

ALTIMARI, District Judge:

By notice of motion dated November 3, 1983, and by agreement of the parties finally submitted for decision on January 10, 1984, plaintiffs move "for an order pursuant to FRCP 12(c) dismissing the defenses" that:

(1) Section 605 of the Communications Act of 1934, 47 U.S.C. § 605, "bars the maintenance of this action;"

(2) Cablevision's alleged tying arrangement "was justified;"

(3) Plaintiffs "may not maintain this action based on the doctrine of unclean hands;" and

(4) "[T]his action may not be maintained as it infringes upon certain defendants copyrights...." (*see* Pl. Notice of Motion dated November 3, 1983).

In addition, plaintiffs move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Cablevision's counterclaim under 47 U.S.C. Section 605, on the ground that it fails to state a cause of action. (*Id.*)

## FACTS

The facts were fully set forth in our recent decision wherein we granted defendants' motion for summary judgment dismissing plaintiffs' fourth cause of action,

*Ciminelli v. Cablevision*, 583 F.Supp. 144 (E.D.N.Y.1984), familiarity with which is assumed.

## DISCUSSION

### I.

Plaintiffs move to dismiss defendants' "affirmative defense" under Section 605 of the Communications Act of 1934, 47 U.S.C. § 605, *see* Plaintiffs' Memorandum in Support of the Motion to Dismiss Various Defenses of the Cable Companies at 3, hereinafter "Pl. Memo. to Dismiss," and Cablevision's counterclaim under the same section. (*See,* Pl. Notice of Motion; Pl. Memo to Dismiss at 14.) Though not clearly stated, it would appear that plaintiffs also seek to dismiss the Section 605 counterclaims of several other defendants.

We begin by noting that the defendants who raise Section 605 in their answer, interpose it as a counterclaim and not as a defense. Thus, to the extent plaintiffs struggle with the question of whether Section 605 can serve as a defense to an alleged antitrust cause of action, they wrestle with the wrong question. The issue is whether defendants' counterclaim under 47 U.S.C. Section 605 states a cause of action upon which relief can be granted. *See* 5. Wright & Miller, *Federal Practice and Procedure,* § 1356, at 590 (1969) ("The [Rule 12(b)(6) ] motion is available to test a claim for relief in any pleading, whether it be in plaintiffs' complaint, *a counterclaim,* cross-motion, or third-party claim.") (Emphasis added) (citations omitted).

Plaintiffs argue that:

(1) Section 605 makes no provision for a private right of action for violation of its provisions;

(2) Section 605 does not apply since defendants' programming is intended for the use of the general public; and

(3) Section 605 does not apply to the interception of wire transmissions or communications. We reject these arguments seriatim.

■ First, this Circuit's Court of Appeals long ago laid to rest the question of whether a private right of action exists under Section 605 by answering that question in the affirmative. *Reitmeister v. Reitmeister*, 162 F.2d 691, 694 (2d Cir.1947). As Judge Sofaer recently stated, "[t]his decision has been upheld repeatedly in this Circuit, and the Supreme Court has declined opportunities to review the issue."

*Home Box Office, Inc. v. Advanced Consumer Technology, Movie Antenna, Inc.,* 549 F.Supp. 14, 16 n. 3 (S.D.N.Y.1981), *citing, Guido v. City of Schenectady,* 404 F.2d 728, 731 (2d Cir.1968), *cert. denied,* 395 U.S. 962, 89 S.Ct. 2099, 23 L.Ed.2d 748 (1969); *Pugach v. Dollinger,* 277 F.2d 739 (2d Cir.1960), *aff'd per curiam on other grounds,* 365 U.S. 458, · 81 S.Ct. 650, 5 L.Ed.2d 678 (1961).

Second, defendants' programming transmissions are simply not intended for the use of the general public. "[T]here is an important distinction between making a service available to the general public and intending a program for the use of the general public." *Chartwell Communications Group v. Westbrook,* 637 F.2d 459, 465 (6th Cir.1980). While the defendants make their programming available to the general public, it is intended for the exclusive use of *paying subscribers,* and surely not for the public in general. We conclude, therefore, that defendants' programming is not intended for the use of the general public. *See id., Movie Systems, Inc. v. Heller,* 710 F.2d 492, 495 (8th Cir.1983); *National Subscription Television v. S & H TV,* 644 F.2d 820, 823 (9th Cir.1981); *Home Box Office, Inc. v. Advanced Consumer Technology, Movie Antenna, Inc., supra,* 549 F.Supp. at 23; *American Television and Communications Corp. v. Western Techtronics, Inc.,* 529 F.Supp. 617, 620 (D.Colo.1982); *Home Box Office, Inc. v. Pay TV of Greater New York, Inc.,* 467 F.Supp. 525, 528 (E.D.N.Y.1979).

Finally, we reject plaintiffs' argument that Section 605 is not applicable to the theft of cable television services. *See, Cablevision v. Annasonic Electronic Supply, et al.,* No. CV–83–5159 (E.D.N.Y. February 10, 1984) (Altimari, J.), (Decision rendered from the bench at completion of civil contempt hearing) (The relevant portion of the decision is included herein as an appendix); *Cox Cable Cleveland Area, Inc. v. King,* 582 F.Supp. 376 (E.D.Ohio 1983) (White, J.); *see also, National Subscription Television v. S & H TV, supra,* 644 F.2d at 826–27; *Porter County Cable, Inc. v. Moyer,* No. S82–172 (N.D.Ind. January 13, 1983).

### II.

Plaintiffs move "for an order granting summary judgment dismissing" Cablevision's affirmative defense of business justification and defendants' Cablevision, Group W Cable Corp., Viacom Cablevision of Long Island Inc. ("Viacom"), Huntington Cable, Inc., Cox Cable of·New York, Inc., ("Cox Cable"), and Brookhaven Cable T.V. Service, Inc., defense of unclean hands. (*See* Pl. Memo to Dismiss at 1–2.) While plaintiffs term it a motion to dismiss or for summary judgment, and rely on the federal rule providing for motions for judgment on the pleadings, the Court will treat the motion as one to strike an insufficient defense pursuant to Rule 12(f), Fed.R.Civ.P. *See, Uniroyal, Inc. v. Heller,* 65 F.R.D. 83, 86 (S.D.N.Y.1974); *Bernstein v. Universal Pictures, Inc.,* 379 F.Supp. 933, 936 (S.D.N.Y.1974), *rev'd on other grounds,* 517 F.2d 976 (2d Cir.1975); *Old Dutch Farms, Inc. v. Milk Driv. & Dairy Emp. Loc. U. No.,* 281 F.Supp. 971, 975–76 (E.D.N.Y.1968).

Preliminarily, to the extent defendants oppose plaintiffs' motion based on their failure to move for the instant relief within twenty (20) days· after the filing of defendants' answers as provided in rule 12, the filing of the amended complaint, to which answers subsequently will be filed, negates this as a ground for· denial of the motion. *See Krauss v. Keibler-Thompson Corp.,* 72 F.R.D. 615, 617 (D.Del.1976). In any event, the rule in question allows the court on its own· initiative at any time to order stricken·any insufficient defense. In effect, the power of the court renders the twenty (20) day rule "essentially unimportant." 2A J. Moore, *Moore's Federal Practice,* par. 12.21, at 2420 (2d ed. 1983). Clearly, the court's power to at any time order the striking of an insufficient defense allows it to consider a motion to strike even though made after twenty (20) days. *See, Uniroyal, Inc. v. Heller, supra,* 65 F.R.D. at 86; *Stonybrook Tenants Assoc., Inc. v. Alpert,* 29 F.R.D. 165, 168 (D.Conn.1961); *Rosenblatt v. United Air Lines,* 21 F.R.D. 110 (S.D.N.Y.1957).

Turning to the merits, plaintiffs move to strike Cablevision's defense of business justification arguing that: "under the *per se* approach to liability the business excuse for the tying arrangement is irrelevant"; in any event, there are only two generally recognized defenses to a tying arrangement, the "new industry defense" and the defense of preservation of a trademark's quality and goodwill, neither of

which is here applicable; and, "[t]here has never been a reported case recognizing theft as a justification for an antitrust violation." (Pl. Memo to Dismiss at 15–18.) Without admitting that it has engaged in an illegal tying arrangement, Cablevision argues that its conduct was nonetheless justified by its need to protect against theft of services. (Cablevision's Memorandum in Opposition to Plaintiff's Motion to Dismiss Certain Counterclaims and Defenses at 8, hereinafter "Cablevision Memo").

Contrary to plaintiffs' argument, it is well settled that business justification may serve as a defense to a *per se* violation of the antitrust laws, as, for example, an illegal tying arrangement. *See, Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 506, 89 S.Ct. 1252, 1260, 22 L.Ed.2d 495 (1969); *Susser v. Carvel Corp.*, 332 F.2d 505, 514–15, 519 (2d Cir.1964), *cert. dismissed*, 381 U.S. 125, 85 S.Ct. 1364, 14 L.Ed.2d 284 (1965). In addition, we do not read the cases as limiting the applicability of the defense to the two categories plaintiffs suggest. *See e.g., Baker v. Simmons Co.*, 307 F.2d 458, 468 (1st Cir.1962) (" 'tie-ins' might be exculpated from the reach of the anti-trust laws if the arrangement was actuated by or could be explained on the basis of a legitimate business justification as opposed to an improper motive...."); *Dehydrating Process Co. v. A.O. Smith Corp.*, 292 F.2d 653, 655 (1st Cir.), *cert. denied*, 368 U.S. 931, 82 S.Ct. 368, 7 L.Ed.2d 194 (1961). *See generally*, Note, *Antitrust: Tying Arrangements: Tying of Goods and Service Justified by a "Sound Business Reason"*, 49 Calif.L.Rev. 746 (1961); Note, *Business Justifications for Tying Agreements: A Retreat From The Per Se Doctrine*, 17 Case W.Res.L.Rev. 257 (1965). While we are not aware of any case, and Cablevision admits that it has found none, recognizing protection from theft as justification for an otherwise illegal tying arrangement, we think the record should be developed before we consider the sufficiency of such a defense. In addition, plaintiffs have pointed to no case rejecting theft as a possible defense. Simply put, we are hesitant to state at this early juncture of the action that Cablevision can establish no set of facts which might adequately support such a defense. We remind the parties that Cablevision carries a heavy burden in establishing a justification defense including, most critically, establishing the absence of less restrictive alternatives.

The above determination, moreover, is quite consistent with the standards for motions to strike pursuant to Rule 12(f). The cases are legion and uniformly hold that motions to strike a defense are disfavored by the courts. *See discussion in* 5 Wright & Miller, *Federal Practice and Procedure*, § 1381, at 799 (1969); *Wohl v. Blair & Co.*, 50 F.R.D. 89, 91 (S.D.N.Y.1970) (Mansfield, J.) ("Such motions are not viewed favorably, the general policy being against denying a party the opportunity to support his contention in more depth at trial.") Indeed, even where well founded, motions to strike often are denied in the absence of a showing of prejudice to the moving party. *See, Oppel v. Empire Mutual Insurance Co.*, 92 F.R.D. 494, 498 (S.D.N.Y.1981); *Sample v. Gotham Football Club, Inc.*, 59 F.R.D. 160, 169 (S.D.N.Y.1973). Furthermore, "[a] motion to strike for insufficiency was never intended to furnish an opportunity for the determination of disputed and substantial questions of law and is not granted if insufficiency of the defense is not clearly apparent or may be better determined in a hearing on the merits." *Budget Dress Corp. v. International Ladies' Garment Workers Union*, 25 F.R.D. 506, 508 (S.D.N.Y.1959) (Ryan, C.J.); *Carter-Wallace, Inc. v. Riverton Laboratories, Inc.*, 47 F.R.D. 366, 367–68 (S.D.N.Y. 1969). *See*, 2A J Moore, *Moore's Federal Practice*, par. 12.21, at 2437 (2d ed. 1983) ("A motion to strike a defense will be denied if ... it fairly presents a question of law or fact which the court ought to hear.") It has been said that "[b]efore this type of motion can be granted 'the Court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed.'" *Systems Corp. v. American Telephone & Telegraph Co.*, 60 F.R.D. 692, 694 (S.D.N.Y.1973) (Pierce, J.), *quoting Carter-Wallace, Inc. v. Riverton Laboratories, Inc., supra*, 47 F.R.D. at 368. In light of the standard for motions to strike, which leaves no doubt that the motion should rarely be utilized early in complex antitrust actions where substantial questions of law and fact are raised, the lack of prejudice that will befall plaintiffs if their motion is denied, and the need for a complete record before a reasoned decision can be reached,

plaintiffs' motion to strike Cablevision's justification defense is denied.

■ Plaintiffs similarly move to strike the defense of unclean hands.

The Supreme Court has held that unclean hands is not a defense to an antitrust cause of action. *Kiefer-Stewart Co., v. Joseph E. Seagram & Sons,* 340 U.S. 211, 214, 71 S.Ct. 259, 261, 95 L.Ed. 219 (1951); *see,* Sullivan, *Law of Antitrust,* § 250, at 785 (1977). Moreover, to the extent defendants really plead "illegality" as a defense, we find persuasive the language of the Ninth Circuit Court of Appeals in *Memorex Corp. v. IBM Corp.,* 555 F.2d 1379 (9th Cir.1977):

"[I]llegality is not to be recognized as a defense to an antitrust action when the illegal acts by the plaintiff are directed against the defendant. A wrongful act committed against one who violates the antitrust laws must not become a shield in the violator's hands against operation of the antitrust laws. This is particularly true when the defendant has other remedies available to him."

*Id.* at 1382.

In the instant action, however, defendants contend that plaintiffs' business is, in actuality, *wholly illegal* and that they therefore lack standing to maintain this action. *See Pearl Music Co. v. Recording Indus. Ass'n of Am., Inc.,* 460 F.Supp. 1060, 1068 (C.D.Cal.1978). Since plaintiffs have offered no response to this contention and the record is otherwise barren on the issue, except for some excerpts from Mr. Ciminelli's deposition, we think both questions of fact and law are raised which preclude us from granting the motion to strike.

### III.

■ Plaintiffs move pursuant to Rule 12(c), Fed.R.Civ.P., to dismiss the defense of copyright infringement. (*See* Pl. Notice of Motion; Pl. Memo to Dismiss at 24). The defendants in question do not raise copyright infringement as a defense to bar plaintiffs from maintaining this action. Instead they seek damages for alleged copyright infringement by way of several counterclaims.

Based on the above, plaintiffs' rule 12(c) motion to dismiss the defense of copyright infringement is denied without prejudice.

*See* Rule 3(d), Civil Rules for the Eastern District of New York. We point out to plaintiffs that the proper motion would be *to dismiss this counterclaim* pursuant to *Rule 12(b)(6).* In addition, such a motion must be accompanied by "a memorandum setting forth the points and authorities relied upon in support of the motion divided, under appropriate headings, into as many parts as there are points to be determined." Rule 3(b), Civil Rules for the Eastern District of New York. Moreover, we suggest that plaintiffs examine and address themselves to the authorities relied upon by Cox Cable, if they move to dismiss the copyright counterclaims after answers to the amended complaint are filed. *See also, Sony Corp. v. Universal City Studios, Inc.,* — U.S. —, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984).

### CONCLUSION

For all of the reasons stated herein, plaintiffs' motion to dismiss certain counterclaims and to strike certain affirmative defenses is denied in full.

SO ORDERED.

### APPENDIX

Last, I address the question of whether plaintiff is likely to succeed on its causes of action. Specifically, whether it will succeed with its action under Section 605 the Communications Act of 1934, 47 U.S.C. § 605. Defendant, in essence, concedes that Section 605 applies in cases dealing with theft of pay television services. *See e.g., Movie Systems, Inc. v. Heller,* 710 F.2d 492 (8th Cir.1983), *National Subscription Television v. S & H T.V.,* 644 F.2d 820 (9th Cir.1981); *Chartwell Communications Group v. Westbrook,* 637 F.2d 459 (6th Cir.1980). He argues, however, that Section 605 does not apply to cases involving theft of cable television services. I disagree.

First, defendants' argument assumes that the theft of cable television services does not encompass the theft or interception of radio communications. Yet, I believe it does. The premium services offered by plaintiffs, such as HBO, are transmitted by interstate radio communications and then relayed to subscribers by means of coaxial cable. While the theft of servic-

**164**

es by way of unauthorized descramblers occurs at the subscriber's home and not at the cable headend, the theft is nevertheless of an interstate radio transmission. The system of coaxial cable used to facilitate final delivery of the signal to subscriber homes, does not change the nature of the stolen transmission itself.

Second, the quite importantly, defendant, I believe, overlooks that even after the 1968 amendment of Section 605, it still clearly and explicitly provides that no person receiving or assisting in receiving any interstate or foreign communication by wire or radio shall divulge or publish such communication except through authorized channels of transmission or reception.

Third, and last, if I accept defendants' position, I am forced to conclude that the 1968 amendment to Section 605, as part of Title III of the Omnibus Crime Control Act of 1968, removed theft of cable services from Section 605 only to fail to place it within the newly enacted wiretapping statutes. Careful review of the legislative history of Title III, 18 U.S.C. § 2510 et seq., 1968 U.S. Code Congressional and Administrative News (p) 2112, *et seq.* shows no intent within that statute to cover the area of theft or interception of cable television services. Thus to construe Section 605 in the manner defendant suggests would, I believe, not effectuate the legislature's intent, lead to an illogical and absurd result, and fail to preserve the vitality and utility of Section 605 itself. Accordingly, I find that Section 605 applies to the instant action.

I further find that plaintiffs have shown that they are likely to succeed on this claim. Defendants' sale of decoders and descramblers, capable of receiving Cablevision's services in Cablevision's franchised areas, and made for the purpose of assisting the unauthorized reception of such wire communication "constitutes a prohibited divulgement or publication within the meaning of Section 605 of the Communications Act of 1934 as 'the act of viewing a program on a television set equipped with an unauthorized decoder amounts do disclosure of the existence, contents, substance, purport, effect, or meaning' of ... signals to nonsubscribers." *Cox Cable Cleveland Area, Inc. v. King*, No. C83–3604, at 11

[582 F.Supp. 376 at 380] (N.D.Ohio October 13 [18], 1983).

In addition, defendants' acts assist others in receiving interstate radio communications, premium services, they're not entitled to. Since this is done for the benefit of defendants and for the benefit of the purchaser as well, it too violates Section 605.

Finally, plaintiffs have a private right of action under Section 605. *Reitmeisler v. Reitmeisler [Reitmeister v. Reitmeister]* 162 F.2d 691, 694 (2d Cir.1947).