**AIR CAPITAL CABLEVISION, INC.,
and Multimedia Cablevision,
Inc., Plaintiffs,**

v.

**STARLINK COMMUNICATIONS
GROUP, INC., and Jeffrey L.
Manion, Defendants.**

No. 83–1997–K.

United States District Court,
D. Kansas.

Feb. 13, 1985.

R. Bruce Beckner, Dow, Lohnes & Albertson, Washington, D.C., for plaintiffs.

Lauritz S. Helland, Brown & Finn Chartered, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

In this suit, two cable television companies, Air Capital Cablevision and Multimedia Cablevision, sued a distributor of earth station satellite dish antennae, Starlink Communications Group, claiming unlawful interception of television signals transmitted via satellite, in violation of § 605 of the Communications Act of 1934, 47 U.S.C. § 605, amended on October 11, 1984 and redesignated as § 705. Currently before the Court are defendants' motion for partial summary judgment on the injunctive claims under the Communications Act, plaintiffs' motion for leave to amend, and plaintiffs' motion to dismiss defendants' counterclaims. For the reasons set forth below, summary judgment as to all Communications Act claims is granted in favor of defendants; the motion for leave to amend is denied; and the motion to dismiss is denied.

### I. *Summary Judgment*

Starlink moved for partial summary judgment on plaintiffs' claims for injunctive relief arising under § 605 of the Communications Act. Starlink moved for partial summary judgment on these claims on the grounds that Congress substantially amended the Act in October 1984 to exempt the manufacture, distribution, and sale of earth station satellite dish antennae from the proscription of the Act, unless programming is encrypted or there is an established marketing system.

Air Capital and Multimedia brought this suit under the former Section 605 of the Communications Act. Numerous courts had held that § 605 prohibited the manufacture, sale, and distribution of equipment that enabled home users to intercept or decode programming transmitted or retransmitted by subscription television companies or by cable television companies. *See, e.g., Movie Systems, Inc. v. Heller,* 710 F.2d 492 (8th Cir.1983) (unauthorized interception of HBO transmissions violate § 605 of the Act); *Chartwell Communications Group v. Westbrook,* 637 F.2d 459 (6th Cir.1980) (sale of subscription television decoders to third parties not entitled to receive encoded transmission violates § 605).

Congress substantially amended § 605, redesignated as § 705, to exempt conduct such as the manufacture, sale, or distribution of earth station satellite dishes from the broad prohibition of the statute. Congress enacted the Cable Communications Policy Act of 1984, Pub.L. 98–549, on October 11, 1984, and the President signed this Act into law on October 30, 1984. Section 5 of the 1984 Act significantly amends § 605, which is redesignated as § 705 of the Communications Act. Section 5 provides in relevant part as follows:

(a) Section 705 of the Communications Act is amended by inserting "(a)" after the section designation and by adding at

the end thereof the following new subsections:

(b) The provisions of subsection (a) shall not apply to the interception or receipt by any individual, or the assisting (including the manufacture or sale) of such interception or receipt of any satellite cable programming for private viewing if—

(1) the programming involved is not encrypted; and

(2)(A) a marketing system is not established under which—

(i) an agent or agents have been lawfully designated for the purpose of authorizing private viewing by individuals, and

(ii) such authorization is available to the individual involved from the appropriate agent or agents; or

(2)(B) a marketing system described in subparagraph (A) is established and the individual receiving such programming has obtained authorization for private viewing under that system.

■ The legislative history of the statute makes clear that in the absence of encrypted programming or an established marketing system, the manufacture, sale, or distribution of earth station satellite dishes does not violate the Act. One legislator stated as follows:

[I]t is my understanding that the intention of this legislation places limitations on the right to view satellite television programming in one's home or other dwelling place. The first limitation is that the legislation applies only to unscrambled signals. The second is that if a programmer that sells cable programming wishes to market unscrambled signals to home earth station users and establishes a good faith system to do so, then there is a lawful requirement for payment. The intention of the legislation, however, is that there must be realistic selling of the programming and there cannot be an attempt to deprive any individual of satellite viewing rights.... Programmers and the viewing public and manufacturers of equipment now have broad room to reach marketplace accommodations.

98 Cong.Rec. H10446 (daily ed. Oct. 1, 1984) (comments of Rep. Tauzin). Another legislator stated as follows:

Today, we come a long way by making it clear that the manufacture, sale and home use of earth stations are legal activities.

*Id.* (comments of Rep. Rose).

■ It is crystal clear to this Court that the 1984 amendments to the Communications Act of 1934 were enacted specifically to protect enterprises such as that in which Starlink Communications Group is engaged. There remains no legal basis under the Act for this suit. Therefore, the motion of defendants, Starlink and Mr. Manion, for partial summary judgment with respect to the injunctive claims brought under the 1934 Communications Act, as amended, is granted.

Further, this Court is convinced that the former § 605 cannot be invoked to proscribe the conduct of Starlink predating the 1984 amendments, and that summary judgment in favor of defendants must be granted as to all claims under the Communications Act.

In general, former § 605 and redesignated § 705 prohibit the unauthorized interception and disclosure of radio communications. Historically, the Act was originally enacted in 1934 to prohibit telephone switchboard operators from divulging any conversation that may be overheard, or telegraph or radio operator from disclosing the contents of a telegram or radiogram. *United States v. Sullivan,* 116 F.Supp. 480 (D.C.1953). The problems inherent in the case at bar, as originally filed under former § 605, are largely a function of judicial attempts to stretch the language of the 1934 statute to apply to the advanced technology of the 1980's.

Numerous courts held that the former § 605 prohibited the manufacture, distribution, and sale of electronic decoding equipment that enabled home viewers to intercept original transmissions or retransmissions by subscription television distribu-

tors, cable television distributors, or other television programming distributors. One category of cases is that in which courts hold that the manufacture, distribution, or sale of decoding equipment violates § 605 when that decoding equipment is used to intercept over-the-air subscription television programming without paying a subscription fee. *E.g., National Subscription Television v. S & H TV*, 644 F.2d 820 (9th Cir.1981); *Chartwell Communications Group v. Westbrook*, 637 F.2d 459 (6th Cir.1980). Another category of cases involves the manufacture, distribution, or sale of converter or decoder devices which, when connected between a cable entering a cable television subscriber's premises and the subscriber's television, unscrambles the cable television signals and enables a cable television subscriber to view additional programming without paying an additional subscription fee, in violation of § 605. *E.g., Porter County Cable Co., Inc. v. Moyer*, No. S 82–172 (N.D.Ind.1983); *Cablevision of Connecticut v. Long Island Wholesale Corp., et al.*, No. B 83–708 (D.Conn.1983). The third category of cases in which courts find violations of § 605 involves the manufacture, distribution, or sale of electronic decoding equipment such as microwave antennae and down-converters to intercept television signals transmitted via multipoint distribution service (MDS) without payment of a subscription fee. *E.g., Movie Systems v. Heller*, 710 F.2d 492 (8th Cir.1983); *United States v. Stone*, 546 F.Supp. 234 (S.D.Tex.1982).

These types of cases wherein courts have found violations of former § 605 are different from the case at bar. The cases finding violations of former § 605 involve the rights of the subscription television distributor, the cable television distributor, or other television programming distributor who either originated the television signal or who received a satellite signal and retransmitted the signal via its own equipment or via common carrier equipment for which use the distributor paid. The offending equipment intercepted or decoded television signals that were originated by or retransmitted by the programming distributor. In the case at bar, the earth station satel-

lite dish antennae do not intercept television signals originated by or retransmitted by the cable television company. Satellite dish equipment does not hook into a cable company's telecommunications network and pirate away or decode the cable company's transmissions.

None of the above-cited cases involve the issue presented in the case at bar: the right to manufacture, distribute, sell, and use equipment that enables a home user to receive the vast number and varied character of television programs transmitted via satellite versus the right of a cable television programming distributor, by virtue of a license from the program producer such as HBO, to retransmit for a subscription fee a select portion of satellite signals to the cable company's subscribers. This case involves collateral rights to receive and enjoy the satellite video signals. This case involves access of the public to the large number of programs and information available via satellite signals by virtue of technological advances.

Congress acted in October 1984 to enable home viewer access to satellite video signals and to encourage free enterprise in the development of the earth station satellite antenna industry. As stated earlier, former § 605 of the Communications Act of 1934 could no longer accommodate the technology of the 1980's. Further, no court has explicitly employed former § 605 to proscribe the manufacture, distribution, sale, or use of earth station satellite dish antennae.

■ The Court holds that Air Capital Cablevision and Multimedia Cablevision have no claim against Starlink Communications Group or Jeffrey L. Manion based on former § 605 of the Communications Act with respect to the conduct of Starlink or Mr. Manion prior to the amendment of § 605 in October 1984. Although the cable companies may have had an exclusive license from television producers of programs such as HBO, Showtime or Cinemax to receive their satellite signal and retransmit by MDS or otherwise their programs via cable to cable subscribers, the cable

**1572**

companies cannot be said to have an exclusive right to receive satellite video signals. In the case at bar, defendants did not intercept a transmission by the cable company, but rather, received the television signals directly from the satellite. The cable company may have an exclusive right to retransmit via MDS the specialty programming to multiple users for profit, but the cable company can have only a collateral right to receive television signals directly from the satellite. The cable company simply has no standing to claim violations under former § 605 of the Communications Act because the users of the earth station satellite dishes were not intercepting a transmission originated by or retransmitted by the cable company.

Therefore, summary judgment in favor of defendants is granted with respect to all claims arising under the Communications Act of 1934.

## II. *Plaintiffs' Motion for Leave to Amend*

Plaintiffs move for leave to amend and supplement their original complaint to include claims which, in substance, would require Starlink to advise potential customers regarding the authorized and unauthorized use of the satellite earth station equipment.

As the defendants point out, the plaintiff cable television companies have no standing to raise these claims, and further, the statute imposes no duty upon Starlink to advise its customers about authorized or unauthorized use of the equipment. Defendants cite legislative history which states that an aggrieved party who may bring a suit under this statute "does not include those entities which possess limited rights of reception and retransmission to the programming, *such as cable systems* and other purchasers of the right to receive it after satellite transmission." 98 Cong. Rec. S 14284 (daily ed. Oct. 11, 1984) (comments of Sen. Goldwater) (emphasis added). Further, defendants' point out that an earth station satellite dish manufacturer or seller is not liable for its customers' violations of the statute unless the manufacturer or seller willfully assists in the violation:

Mr. President, I would like to point out that the commonsense [sic] interpretation of section 705 should be that a manufacturer, importer, distributor or seller of satellite receiving equipment cannot be made liable in criminal or civil actions based upon the mere sale of such equipment to a person who subsequently violates section 705. *These business person would have to knowingly and willfully assist in enabling a particular individual to violate the law, not simply be aware that the equipment by itself or in combination with other components might possibly be used for prohibited purposes.*

98 Cong.Rec. S 14284 (daily ed. Oct. 11, 1984) (comments of Sen. Goldwater) (emphasis added).

The Court finds no legal basis for the proposed supplements and amendments to plaintiffs' complaint, and therefore, the plaintiffs' motion for leave to amend is denied.

## III. *Plaintiffs' Motion to Dismiss Defendants' Counterclaims*

Air Capital and Multimedia move for dismissal of Starlink's first and second counterclaims arising under § 2 of the Sherman Act, 15 U.S.C. § 2, in which Starlink charges plaintiffs with monopolization and attempted monopolization in violation of the Act.

Plaintiffs contend that the antitrust claims should be dismissed because Starlink has failed to allege and define a proper relevant product market and because Starlink lacks standing because Starlink has failed to show it has sustained an antitrust injury.

A properly pleaded claim of monopolization under § 2 consists of two elements: (1) the possession of monopoly power in the relevant market, and (2) an overt act or acts constituting purposeful acquisition or maintenance of that monopoly power. *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966). An attempt to monopolize also requires two fundamental ele-

ments: (1) specific intent to achieve a monopoly, and (2) a dangerous probability of monopolization if the overt acts are successful. *E.J. Delaney Corp. v. Bonne Bell, Inc.*, 525 F.2d 296 (10th Cir.1975), *cert. denied* 425 U.S. 907, 96 S.Ct. 1501, 47 L.Ed.2d 758 (1976). To meet these elements, a party must demonstrate a relevant product market in a geographical area in which the alleged monopolist operates. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177, 86 S.Ct. 347, 350, 15 L.Ed.2d 247 (1965); *Gilbuilt Homes, Inc. v. Continental Homes of New England*, 667 F.2d 209 (1st Cir.1981).

Plaintiffs argue that Starlink's antitrust counterclaims are fatally defective for failure to properly allege and define a relevant product market and because Starlink's marketing of earth stations is not in competition with the cable companies' marketing of programming services such as HBO, Showtime and Cinemax. Plaintiffs argue that Starlink's allegations concern two analytically distinct markets: plaintiffs' market for the sale of HBO, Showtime and Cinemax programming; and Starlink's market for the sale of earth stations.

Defendants state that their antitrust counterclaims charge that Air Capital and Multimedia instituted this litigation against Starlink not to seek good faith adjudication, but to impede competition, in part by threatening to expand this action to include baseless lawsuits against Starlink's customers. Starlink argues that this conduct monopolized and attempted to monopolize the distribution to consumers of the means of home reception of satellite television programming. Starlink contends that it has clearly alleged facts sufficient to raise the issues of actual competition between the parties in a relevant product market and resulting damage to Starlink.

Starlink contends that the allegations in its counterclaim satisfy the required allegation of a relevant product market. The cable television companies contend that the relevant product markets are: (a) Air Capital and Multimedia's market of selling motion picture programming for home viewing, and (b) Starlink's market of selling earth stations for individual consumer use. Starlink, on the other hand, contends that the relevant product market is that of providing the facilities for home use viewing of satellite-transmitted television signals; arguing that although Starlink sells satellite earth stations and Air Capital and Multimedia provide cable service, both entities provide the same ultimate service although by different means or facilities.

▪ For the purpose of this motion to dismiss, the Court agrees with Starlink and finds that Starlink has adequately alleged a relevant product market and that plaintiffs' motion to dismiss defendants' counterclaim cannot be granted on these grounds.

The Court next considers plaintiffs' argument that Starlink lacks standing to assert antitrust counterclaims. Plaintiffs argue that Starlink's counterclaim fails to sufficiently allege that Starlink has suffered "antitrust injury" within the meaning of *Brunwick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Plaintiffs argue that Starlink was not directly injured by an antitrust violation, nor was the alleged injury of the type the antitrust laws were intended to prevent, because Starlink is neither a consumer nor a competitor in the market in which plaintiffs participate. Starlink, on the other hand, contends that the cable companies and Starlink engage in extensive competition; that plaintiffs instituted this litigation for the purpose of eliminating competition posed by Starlink, which constitutes an antitrust violation; and that Starlink suffered direct injury as a result of plaintiffs' litigation against Starlink and plaintiffs' threatened litigation against Starlink's customers and prospective customers.

▪ Again, the Court is persuaded by the defendants' arguments, and at this stage in the litigation, finds that Starlink has standing to assert these antitrust counterclaims. Therefore, plaintiffs' motion to dismiss defendants' counterclaims is denied.

IT IS THEREFORE ORDERED this 13 day of February, 1985, summary judgment

as to all claims under the Communications Act is granted in favor of defendants; the plaintiffs' motion for leave to amend is denied; and the plaintiffs' motion to dismiss defendants' counterclaims is denied.

Counsel are directed to meet within the next 30 days in the interest of discussing requisites for discovery, exchange of material and settlement prospects. A status conference in chambers is scheduled on March 18, 1985, at 2:00 P.M.