QUINCY CABLESYSTEMS, INC., and New England Sports Network, Plaintiffs,

v.

SULLY'S BAR, INC., d/b/a Sully's Bar, Darcy's Village Pub, Inc., d/b/a Darcy's Village Pub, Cafe Viking, Inc. of Quincy, d/b/a Dee Dee's Restaurant, and C.M. Kane Corp., d/b/a Kane's Place, Defendants.

Civ. A. No. 86–2183–C.

United States District Court,
D. Massachusetts.

Aug. 6, 1986.

Philip X. Murray, Maurice T. Cunningham, Dwyer & Murray, Boston, Mass., for plaintiffs.

Carol S. Ball, Frank W. Kilburn & Associates, Boston, Mass., for defendant Cafe Viking, Inc.

Arnold S. Solod, Solod & Rovner, P.A., Boston, Mass., for defendant C.M. Kane Corp.

Nancy Gertner, Gail S. Strassfeld, Silverglate, Gertner, Baker, Fine, Good & Mizner, Boston, Mass., for defendants Sully's Bar and Darcy's Pub.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action which is now before the Court on a motion by the plaintiffs, Quincy Cablesystems, Inc. ("Quincy") and New England Sports Network ("NESN"), for a temporary restraining order.[1] The defendants in the case are four taverns located in Quincy, Massachusetts: Sully's Bar, Inc., d/b/a Sully's Bar ("Sully's"), Darcy's Village Pub, Inc., d/b/a Darcy's Village Pub ("Darcy's"), Cafe Viking, Inc. of Quincy, d/b/a Dee Dee's Restaurant ("Dee Dee's"), and C.M. Kane Corp., d/b/a Kane's Place ("Kane's Place"). A hearing was held on the motion at which all parties were represented by counsel. After hearing I rule as follows:

Plaintiff Quincy owns and operates the cable television system in Quincy, Massachusetts. Plaintiff NESN is a program provider which has acquired contractual rights to broadcast various sports programs, including Boston Red Sox and Boston Bruins games. Quincy has contracted with NESN to receive NESN's programs for transmittal to Quincy's cable customers for a fee. NESN transmits programs to Quincy via satellite signals. Both plaintiffs intend that their programming reach only members of the general public who pay a fee for receiving those programs.

Each of the defendant taverns owns and operates a satellite dish antenna. Using these satellite dishes, the defendants have been intercepting NESN signals intended for direct receipt only by Quincy and exhibiting NESN programs to their customers without the permission of, or payment of fees to, either of the plaintiffs. The plaintiffs allege that the defendants thereby are violating both federal and state law, and seek to have the practice enjoined.

█ The standard used by a district court considering a request for a temporary restraining order is the same standard used for determining whether to issue a preliminary injunction. 11 Wright & Miller, *Federal Practice and Procedure: Civil* Section 2951 (1973). To be entitled to a temporary restraining order, the plaintiffs must satisfy four criteria: 1) the plaintiffs must exhibit a likelihood of success on the merits; 2) the plaintiffs must show that they will suffer irreparable injury if the injunction is not granted; 3) the plaintiffs must show that such injury to them outweighs any harm which granting injunctive relief would inflict on the defendants; and 4) the plaintiffs must show that the public interest will not be adversely affected by the granting of injunctive relief. *LeBeau v. Spirito,* 703 F.2d 639, 642 (1st Cir.1983).

█ The first question to be considered is whether the plaintiffs have demonstrated a likelihood of success on the merits. In

1. The defendants have challenged the standing of Quincy. It is unnecessary for the Court to address that issue at this point in the proceedings since NESN's standing has not been questioned.

count one plaintiffs allege violations of the Federal Communications Act of 1934, Section 705(a) (formerly Section 605). Section 705(a) prohibits unauthorized receiving and publishing of communication signals which are not intended for the use of the general public. It is undisputed in this case that the defendants are using their satellite dishes to intercept NESN program signals which are intended only for paying customers and are not intended for the public as a whole. It is also undisputed that defendants are showing the programs to patrons of the taverns without authorization from NESN. The defendants' practice does not fall within the exception to the prohibition in Section 705(a) which is found in Section 705(b).[2] That exception applies only to the interception of unscrambled satellite cable programming by individuals for viewing in their private homes. The plain language of the exception in Section 705(b) shows that it was not intended to, and does not, apply to commercial establishments which seek to enhance the appeal of their establishments by showing to their customers video programs whose signals are being transmitted via satellite to cable companies. *American Television and Communications Corp. v. Floken*, 629 F.Supp. 1462, 1469 (M.D.Fla. 1986); *Entertainment and Sports Programming Network, Inc. v. Edinburg Community Hotel*, 623 F.Supp. 647, 652 (S.D.Tex.1985). NESN is not under any duty to encode or scramble its signals in order to qualify for protection under Section 705(a). *California Satellite Systems v. Seimon*, 767 F.2d 1364, 1367 (9th Cir. 1985). I therefore rule that the plaintiffs have shown a likehood that they will succeed on the merits in this case.

The second question for this Court to decide is whether the plaintiffs will suffer irreparable harm absent injunctive relief. The unauthorized interception and exhibition of the NESN programs results in more than a loss of fees to the plaintiffs. It also deprives the plaintiffs of the full value of their business investment, costs them business opportunities, and has a negative impact on the plaintiffs' reputation and good will. *Floken*, 629 F.Supp. at 1466; *Edinburg Community Hotel*, 623 F.Supp. at 652. NESN has suffered and continues to suffer the loss of its right to control the reception of its communications. *Pro Am Sports Systems, Inc. v. Larry Simone, Inc.*, No. 84CV2032DT, 4 E.D.Mich. Jan. 15, 1986); *Edinburg Community Hotel*, 623 F.Supp. at 652. Quincy loses an unascertainable number of potential customers for the retransmission of NESN programming each time a defendant exhibits the programs in his tavern. I note that at least one of the defendants was a customer of Quincy prior to purchasing a satellite dish. The plaintiffs are not able to detect or determine when the defendants are receiving and exhibiting the programs to which plaintiffs own exclusive transmission rights without actually visiting the defendants' establishments. Congress' express reference to a court's right to grant temporary injunctions in cases concerning violations of Section 705(a) shows an awareness that interim injunctive relief is likely to be necessary in cases such as this one. Section 705(d)(3)(B). Having considered all these factors, I rule that the plaintiffs have shown that they probably will suffer irreparable harm, absent immediate injunctive relief. *Pro Am Sports System, Inc.*, No. 84CV2032DT, at 4; *Flo-*

**2.** Section 705(b) provides:

The provisions of subsection (a) of this section shall not apply to the interception or receipt by any individual, or the assisting (including the manufacture or sale) of such interception or receipt, of any satellite cable programming for private viewing if—
(1) the programming involved is not encrypted; and
(2) (A) a marketing system is not established under which—

(i) an agent or agents have been lawfully designated for the purpose of authorizing private viewing by individuals, and
(ii) such authorization is available to the individual involved from the appropriate agent or agents; or
(B) a marketing system described in subparagraph (A) is established and the individuals receiving such programming has obtained authorization for private viewing under that system.
47 U.S.C. Section 605(b).

*ken,* 629 F.Supp. at 1466; *Edinburg Community Hotel,* 623 F.Supp. at 652.

Turning to the final two criteria, I rule first of all that the balance of the equities favors the plaintiffs. The plaintiffs have shown that the defendants' continued unauthorized reception and exhibition of NESN's programming results in substantial injury to them while the harm to the defendants which would result from the imposition of injunctive relief is slight. The defendants may show video programming intended for reception by the public at large in the interim or may subscribe to NESN programs through Quincy. Finally, I rule that granting injunctive relief is in the public's interest. The general public has an interest in ensuring the integrity of communications systems, including satellite transmissions. *Floken,* 629 F.Supp. at 1473. Members of the viewing public who desire a wider choice in video programs than that available from broadcast television have an interest in the success and survival of the cable industry. *Id.* Those who subscribe to and pay for the special services and programs provided by originators such as NESN and distributors such as Quincy have an interest in assuring that they will not pay a disproportionate share of the costs of satellite programming systems. *Id.*

I rule that the plaintiffs have satisfied the four criteria necessary for the granting of a temporary restraining order.

Order accordingly.

### TEMPORARY RESTRAINING ORDER

*August 6, 1986*

In accordance with memorandum filed this date, it is ORDERED:

The defendants, their officers, agents, servants, employees and those persons acting in concert with them are, pending further order of this Court, enjoined from: intercepting, receiving, appropriating, converting to their own use, or retransmitting, divulging or using any satellite-delivered transmissions or plaintiffs' programming signals, or any satellite-delivered program-

ming which Quincy makes available to the public through its master contracts, without authorization from plaintiffs.