**THAT'S ENTERTAINMENT, INC., Plaintiff,**

**v.**

**J.P.T., INC. d/b/a Colonial Inn and James P. Thomas, Defendants.**

**Civ. No. H–93–599.**

United States District Court, D. Maryland.

Dec. 27, 1993.

Andrew Radding, Francine R. Strauss, and Blades & Rosenfeld, PA., Baltimore, MD, for plaintiff.

David A. Clinnin, Towson, MD, for defendants.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, Senior District Judge.

Presently pending in this civil action is a motion filed by plaintiff That's Entertainment, Inc. ("TEI") seeking summary judgment as to the issue of liability. Plaintiff TEI has alleged in its complaint that on June 19, 1992, defendants J.P.T., Inc. ("JPT") and James P. Thomas unlawfully intercepted and broadcast to the patrons of the Colonial Inn a professional heavyweight boxing match between Evander Holyfield and Larry Holmes. Plaintiff has alleged that it owned the exclusive closed-circuit television licensing rights to the event and that the undisputed facts establish that defendants have violated § 705 of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 (hereinafter, the "Act"). By way of its motion for summary judgment, plaintiff asks this Court to enter judgment against defendants on the issue of liability and to conduct such further hearings or investigations as may be necessary to determine the issue of damages.

Memoranda, affidavits, and exhibits in support of and in opposition to the pending motion have been submitted by the parties and reviewed by the Court. Pursuant to Local Rule 105.6, no hearing is deemed necessary. For the reasons to be stated, plaintiff's motion for summary judgment on the issue of liability will be granted.

I

*Facts*

On or about May 12, 1992, plaintiff TEI entered into a closed circuit television license agreement (the "Agreement"), whereby TEI purchased for a substantial fee the exclusive licensing rights to the live closed circuit television broadcast of the June 19, 1992 professional heavyweight boxing match between Evander Holyfield and Larry Holmes, including any undercard or preliminary bouts (the "Event"). Under the Agreement, plaintiff obtained the exclusive right to exhibit and to further sublicense the exhibition of the live telecast of the Event "only at closed circuit television exhibition outlets (such as theaters, bars, clubs, lounges, restaurants

and the like)." The closed circuit broadcast of the Event was not intended for the use of the general public and in Maryland was intended to be publicly broadcast only in commercial establishments that were contractually permitted to do so by plaintiff. Plaintiff's licensing rights under the Agreement were not, however, exclusive of the rights of other entities to broadcast the Event to private, residential (*i.e.*, non-commercial) cable subscribers on a pay-per-view basis. Certain local cable service providers in the Maryland area advertised and offered the Event to their subscribers under such a pay-per-view format.

Pursuant to the Agreement, plaintiff marketed and distributed its closed circuit rights to the Event. Throughout Maryland, plaintiff contracted with various commercial establishments, such as theaters, arenas, bars, clubs, and restaurants, and, in exchange for a fee, plaintiff granted to such establishments the right to broadcast the Event. The transmission of the Event was electronically coded or scrambled and could be viewed on a television receiver only with electronic decoding equipment. Commercial establishments having contracted with plaintiff to broadcast the Event were either provided with the electronic decoding equipment or, if the establishment already possessed such equipment, were provided with the electronic address information necessary to receive and decode the signal.

In its complaint, plaintiff alleges that defendants unlawfully intercepted and received the signal carrying the Event and broadcast the Event to patrons at the Colonial Inn. Plaintiff asserts that the alleged acts of defendants entitle plaintiff to recover: (1) statutory damages in the amount of $10,000, pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) additional damages in the amount of $100,000, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and (3) full costs, including reasonable attorneys' fees, pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). In seeking summary judgment solely as to the issue of liability, plaintiff asserts that the undisputed facts establish as a matter of law that defendants violated Section 705 of the Act.

In support of its motion for summary judgment, plaintiff has submitted the affidavit of Anthony Myers, a private investigator employed by plaintiff. Myers states in his affidavit that on the night of June 19, 1992, he was present in the Colonial Inn between 11:00 p.m. and 11:05 p.m. and that at that time he observed the Event being broadcast to approximately 85 patrons on three different television sets in the bar area. Myers further states that he then handed a cease and desist letter to the "manager" of the Colonial Inn, a person identified as "Jim Thomas."

In opposition to plaintiff's motion, defendants do not dispute that the Event was broadcast to the patrons of the Colonial Inn on the evening of June 19, 1992. In an affidavit submitted by defendants, defendant James P. Thomas admits that he was present at the Colonial Inn on the night in question and that he personally observed the Event being broadcast to patrons of the Colonial Inn. Thomas further states that in 1985, as the owner of the Colonial Inn, he had United Artists Cable of Baltimore ("United"), a local cable service provider, install three cable television converters "in the premises known as the Colonial Inn at 2001 Eastern Avenue." Defendants contend that they are not responsible for any violation of the Communications Act because, on the evening in question, Thomas legitimately obtained and paid for the Event through United.

In rebuttal to defendants' contention that the broadcast of the Event to the patrons of the Colonial Inn was authorized, plaintiff has submitted the affidavit of Joyce Rutledge, a Program Service Manager with United, who states that the cable account for the location at 2001–2003 Eastern Avenue was established on April 16, 1990 as a residential account listed under the name of Thomas. Rutledge further states that United's records indicate that three cable service outlets (*i.e.* converters) were installed at that time: one in a "living room" and two in "bedrooms." Finally, Rutledge states that United's records indicate that the Event was ordered for Thomas' residential account through the automatic response unit (*i.e.* by calling an ad-

vertised "pay-per-view" telephone number) on June 17, 1992.

In further support of its motion, plaintiff has submitted the affidavit of Terry Rhoades, an Aerial Maintenance Line Technician employed by United, who states that on August 31, 1993, he conducted a "site survey" of the property at 2001–2003 Eastern Avenue. According to Rhoades, 2001–2003 Eastern Avenue consists of two buildings which have been combined into one, with the lower floor containing the bar called the Colonial Inn and the other upper floor consisting of several apartments. Rhoades states that he observed three television sets in the bar, two of which were turned on and were displaying the same programming. At the time of his visit, Rhoades observed an employee of the Colonial Inn operate a cable remote control to change the channel for these televisions by pointing the remote control down towards some cabinets that were behind the bar. Rhoades also observed a three-way cable splitter going into the back of one of the television sets. He inspected the outside of the building and noted that the cable line went directly into the second floor of the building from a telephone pole near the rear of the property.

## II

### *Summary Judgment Principles*

■ The principles to be applied by this Court in considering a motion for summary judgment under Rule 56, F.R.Civ.P., are well established. The burden is on the party moving for summary judgment to demonstrate clearly that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). This burden is met by consideration of affidavits, exhibits, depositions and other discovery materials. *Id.*

■ The Fourth Circuit has stated that, with regard to motions for summary judgment, trial judges have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from going to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987), quoting *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A mere scintilla of evidence in favor of the non-moving party will not suffice to defeat a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

■ Rule 56(c) provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts shown that there is a genuine issue for trial." *See Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988). A party opposing a motion for summary judgment therefore must produce pre-trial evidence countenanced by Rule 56(e) to contradict facts established by evidentiary materials furnished by the moving party.

Applying these principles to the facts of record here, this Court concludes that summary judgment as to liability must be granted in favor of plaintiff against both defendants. Plaintiff has produced conclusive evidence indicating that defendants have violated § 705 of the Act, and defendants have not come forward with material evidence, as required by Rule 56(e), rebutting the facts established by plaintiff's proof.

## III

### *Discussion*

Section 705(a) of the Federal Communications Act provides, in pertinent part, as follows:

[N]o person receiving [or] assisting in receiving ... any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, .... No person not being authorized by the sender shall intercept any

radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

■ This statute has been interpreted to prohibit the theft of scrambled satellite communications and cable television services. *See, e.g., California Satellite Systems v. Seimon,* 767 F.2d 1364, 1366–67 (9th Cir. 1985); *National Subscription Television v. S & H TV,* 644 F.2d 820 (9th Cir.1981); *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.,* 640 F.Supp. 1159, 1160–61 (D.Mass.1986); *Ciminelli v. Cablevision,* 583 F.Supp. 158, 161 (E.D.N.Y.1984); *National Football League v. Alley, Inc.,* 624 F.Supp. 6 (S.D.Fla.1983). The Act prohibits commercial establishments from intercepting and broadcasting to its patrons even unscrambled satellite cable programming. *Quincy Cablesystems, Inc.,* 640 F.Supp. at 1161.

■ On the record here, this Court finds and concludes that defendants JPT and Thomas have violated § 705(a) of the Act by their unlawful interception and receipt of the Event and by their unauthorized broadcast of that transmission to the patrons of the Colonial Inn. Even assuming, as these defendants contend, that there was no "interception" here because Thomas was "authorized" by United to receive the Event on a pay-per-view basis, defendants still have violated the Act because they clearly were not authorized to then broadcast the Event to the patrons of a **commercial** establishment such as the Colonial Inn. While defendants are correct in pointing out that the second sentence of Section 705(a) of the Act requires both an unauthorized "interception" and a divulgence of a cable television transmission in order to establish liability under the Act, *see, e.g., United States v. Butenko,* 494 F.2d 593, 599–600 (3d Cir.1974) (*en banc*), the first and third sentences of Section 705(a) do not similarly require an "interception" of a cable transmis-

sion and clearly proscribe the unauthorized divulgence or use of communications which have been "received" legally for certain purposes. 47 U.S.C. § 605(a).

■ Nor is it relevant under the Act whether defendants' unauthorized acts were willful or knowing. Although plaintiff would be entitled to an increase in damages if it can prove that the defendants' violation of the Act was willful, Section 705(e) of the Act is devoid of any language indicating that the Act is violated only by knowing or willful conduct. Indeed, the civil damages provisions clearly provide for an award of damages to a plaintiff even if "the court finds that the violator was not aware and had no reasons to believe that his acts constituted a violation of [Section 705(a)]." 47 U.S.C. § 605(e)(3)(C)(iii). *See International Cablevision, Inc. v. Sykes,* 997 F.2d 998, 1004 (2d Cir.1993) (quoting from legislative history of Act and noting that § 605(e)(3)(C)(iii) "was not intended to create a good-faith defense to an assertion of liability under § 605").

■ Defendants have not pointed to specific facts in the record rebutting the evidence presented by plaintiff that there was in fact an "interception" of the Event within the meaning of the Act. As stated by the Supreme Court in *Goldman v. United States,* 316 U.S. 129, 134, 62 S.Ct. 993, 995, 86 L.Ed. 1322 (1942), *overruled on other grounds in Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the word "intercept" as used in the Act "indicates the taking or seizure by the way or before arrival at the destined place." Through the affidavits of Rutledge and Rhoades, plaintiffs have presented evidence establishing that defendants wrongfully removed to the Colonial Inn one or more of the cable converters installed by United in the upstairs apartments of 2001–2003 Eastern Avenue. When a motion for summary judgment is made and supported by proper evidence, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must come forward, by affidavits or otherwise, with specific facts showing that there is a genuine issue for trial. F.R.Civ.P. 56(e). On the present rec-

ord, the Court finds that defendants have failed to show that there is a triable issue as to the fact that defendants diverted the signal of the Event from its intended point of reception to the Colonial Inn where it was not authorized.

 Defendants final argument, namely that the Act by its terms applies only to "radio" transmissions while the transmission here was received by "wire," merits little discussion. Other courts have rejected this very same argument for three reasons. *See, e.g. Ciminelli v. Cablevision,* 583 F.Supp. 158, 161 (E.D.N.Y.1984); *Cablevision v. Annasonic Electronic Supply,* No. CV–83–5159 (E.D.N.Y. Feb. 10, 1984) (Altimari, J.) First, the Event here was in fact transmitted from the site of the actual fight by interstate radio communications (*i.e.* by satellite transmission). While the signal was ultimately relayed to individual subscribers by means of coaxial cable, "[t]he system of coaxial cable used to facilitate final delivery of the signal to subscriber homes, does not change the nature of the stolen transmission itself." *Anasonic, supra.* Second, defendants overlook the fact that even after the 1968 amendments to Section 705 of the Act (which deleted references to "wire" communications from, *inter alia,* the second and third sentences of Section 705(a)), the Act "still clearly and explicitly provides that no person receiving or assisting in receiving any interstate or foreign communication by wire or radio shall divulge or publish such communication except through authorized channels of transmission or reception." *Anasonic, supra.* Third, if this Court were to accept defendants' argument in this respect, the Court would be "forced to conclude that the 1968 amendment to Section [705], as part of Title III of the Omnibus Crime Control Act of 1968, removed theft of cable services from Section 605 only to fail to place it within the newly enacted wiretapping statutes." *Anasonic, supra.* This Court has made a careful review of the legislative history of Title III, 18 U.S.C. § 2510 *et seq,* and concludes, as did the Court in *Anasonic,* that to construe Section 705 in the manner defendant suggests would "not effectuate the legislature's intent, [would] lead to an illogical and absurd result,

and [would] fail to preserve the vitality and utility of Section [705] itself." *Id.*

Accordingly, this Court finds and concludes as a matter of law that plaintiffs have established that defendants JPT and Thomas violated Section 705(a) of the Act by their unauthorized interception, receipt and broadcast of the Event to the patrons of the Colonial Inn on June 19, 1992. Plaintiff is therefore entitled to the entry of summary judgment in its favor against both defendants as to the issue of liability in this case.

For the reasons stated herein, it is this 27th day of December, 1993 by the United States District Court for the District of Maryland,

ORDERED:

1. That plaintiff's motion for summary judgment on the issue of liability be and the same is hereby granted;

2. That judgment as to liability is hereby entered in favor of plaintiff against defendants J.P.T., Inc. and James P. Thomas, jointly and severally; and

3. That further proceedings will be scheduled by the Court for the determination of damages to be awarded to plaintiff.