**KINGVISION PAY PER VIEW, LTD., Plaintiff,**

v.

**Effie Louise WILLIAMS, d/b/a Beettle's Place, and Soyop Sierleja, d/b/a Club Barcelona, Defendants.**

**No. CV 197–46.**

United States District Court, S.D. Georgia, Augusta Division.

March 23, 1998.

Joseph R. Manning, R. Joseph Burby, IV, Bryan Guy Harrison, Morris, Manning & Martin, LLP, Atlanta, GA, Vincent M. Davison, Jr., Augusta, GA, for KingVision Pay Per View, Ltd.

J. Wade Padgett, Augusta, GA, for Effie Louise Williams, Soyop Sierleja.

Effie Louise Williams, Augusta, GA, pro se.

Soyop Sierleja, Hephzibah, GA, pro se.

Benjamin Allen, Benjamin Allen & Associates, Augusta, GA, for Charon Enterprises, Inc.

---

1. Defendants Squeaky's Tip Top, Inc. and Charon Enterprises, Inc. were original parties to this case. They, however, were dismissed as parties upon motion by KingVision.

## ORDER

BOWEN, Chief Judge.

Before the Court in the above-captioned matter is Plaintiff's Motion for Summary Judgment against Defendant Effie Louise Williams as to her liability. Upon careful consideration of the briefs submitted by the parties and the relevant statutory and case law, it is hereby **ORDERED** that Plaintiff's Motion is **GRANTED** for the reasons stated below.

### I. FACTS

This is an action for statutory damages under the Cable Communications Policy Act of 1984 (codified as amended at 47 U.S.C. § 521 *et seq.*) (Cable Act) for the Defendants unauthorized exhibition of the Frank Bruno versus Mike Tyson boxing match on March 16, 1996. Plaintiff, KingVision, sued several parties,[1] including Williams, for exhibiting the boxing match to patrons in their establishments without an agreement to do so in violation of 47 U.S.C. §§ 553 & 605.

KingVision filed this Motion for Summary Judgment against Defendant Williams as to her liability on August 29, 1997. On September 8, 1997, United States Magistrate Judge W. Leon Barfield granted the parties' joint motion to extend Williams' time to respond to the Motion for Summary Judgment up to and including October 1, 1997. This extension was requested because of the withdrawal of Williams' counsel. Afterwards, Williams never filed a notice of appearance of new counsel. On February 18, 1998, the Court ordered Williams to respond to the Motion or give notice of her intention not to respond. She responded to the Motion on February 27, 1998 and proceeds *pro se*.

KingVision owned the exclusive rights to exhibit and distribute the closed-circuit rights to the telecast of the Frank Bruno versus Mike Tyson boxing match. The closed-circuit broadcast of the boxing match could only be exhibited in a commercial establishment if the establishment were contractually authorized to do so by KingVision. Commercial establishments pay a higher fee

to receive the boxing match than do residential viewers because commercial establishments display the broadcast to their patrons.

On the evening of the boxing match, an investigator from KingVision entered Beettle's Place and observed the fight being displayed to the patrons. Beettle's Place is a small bar and grill located at 2342 Gordon Highway, Augusta, Georgia, and is owned and operated by Williams. Williams admits that she displayed the boxing match to about twenty-five of her patrons at Beettle's Place. It is undisputed that she did not contract with KingVision to display the boxing match at her establishment. Williams, however, states that she did not know she was required to do so. She contends that one of her employees, Chris Holland, ordered the boxing match from her satellite service provider on a pay-per-view basis. The pay-per-view basis is the residential/noncommercial rate. While immaterial for the purposes of liability, in her response Williams contends that she did not charge any cover or advertise the boxing match.

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Applicable substantive law determines which facts are material, that is, which facts have the potential to affect the outcome of the trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his [or her] favor." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (internal quotation marks and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for its motion. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the nature of the movant's initial burden "varies depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). If the *movant* bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, ... no reasonable jury could find for the non-moving party." *Four Parcels*, 941 F.2d at 1438. On the other hand, if the *non-movant* has the burden of proof at trial, the movant may carry its initial burden either by negating an essential element of the non-movant's case or by demonstrating that there is an absence of evidence to prove a fact necessary to the non-movant's case. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606–08 (11th Cir.1991) (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Merely stating that the non-movant cannot meet its burden at trial is insufficient. *Id.*

If—and only if—the movant carries the initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." *Id.* 929 F.2d at 608.[2] Again, this burden varies depending upon whether the movant or non-movant bears the burden of proof at trial. If the movant has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence sufficient to withstand a motion for directed verdict at trial. *Fitzpatrick*, 2 F.3d at 1116 (citation omitted). If the non-movant bears the burden of proof at trial, the non-movant's response must be tailored to the method by which the movant carried its initial burden. If the movant presented evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to

2. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *See Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir.1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Fed.R.Civ.P. 56.

withstand a directed verdict motion at trial on the material fact sought to be negated." *Id.* If the movant demonstrated an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant, or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* (citation omitted).

The clerk has given the non-moving party notice of the summary judgment motion, of the right to file affidavits or other materials in opposition, and of the consequences of default. Therefore, the notice requirements of *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir.1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

### III. ANALYSIS

Section 553 of the Cable Act provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by the cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Courts have interpreted the "cable system" language on the face of this section to encompass illegal interception or reception via coaxial cable or wire. *See United States v. Norris*, 88 F.3d 462, 467–69 (7th Cir.1996); *Joe Hand Promotions v. Rennard Street Enterprises*, 954 F.Supp. 1046, 1053–54 (E.D.Pa.1997); *TCI Cablevision v. Pier House Inn, Inc.*, 930 F.Supp. 727, 734 (D.R.I.1996). *But see International Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2nd Cir.1996).

■ Section 605 of the Cable Act, on the other hand, provides as follows:

No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. *No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such*

*communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.* No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a) (emphasis added). The term "radio" includes satellite transmissions. *National Football League v. Alley, Inc.*, 624 F.Supp. 6, 9 (S.D.Fla.1983). A review of the Record indicates that Williams received the boxing match via a satellite dish receiver. Thus, Williams can only be liable under § 605 and not § 553.

■ Although Williams admits that she displayed the boxing match to her establishment's patrons, her Answer claims as a defense that she paid for the boxing match on a pay-per-view basis. This does not, however, relieve her from liability. While she may not have illegally intercepted the satellite signal, she was not authorized to display it to her establishment's patrons. *See That's Entertainment, Inc. v. J.P.T., Inc.*, 843 F.Supp. 995, 999 (D.Md.1993) (display of boxing match legally received on a pay-per-view basis to commercial patrons without authorization is a violation of the Cable Act).

■ Williams also states that she did not know she was doing anything illegal. The Cable Act, however, does not require a knowing violation. The Cable Act states that "where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. § 605(e)(3)(C)(iii); *see also That's Entertainment, Inc.*, 843 F.Supp. at 999. Thus, Williams's knowledge concerns her damages and not her liability.

The undisputed facts show that Williams displayed the Frank Bruno versus Mike Tyson boxing match to approximately twenty-five of her establishment's patrons without contractual authorization from KingVision or its agents. These facts show that Williams violated § 605 of the Cable Act, and thus summary judgment as to her liability is appropriate.

### IV. CONCLUSION

Upon the foregoing, it is hereby **ORDERED** that Plaintiff's Motion for Summary Judgment as to Williams's liability under § 605 of the Cable Act is **GRANTED.** The case shall proceed to trial for resolution of the remaining issue of damages as to Defendant Williams and the remaining issues of liability and damages as to Defendant Soyop Sierleja.