**NATIONAL SATELLITE SPORTS, INC., Plaintiff,**

v.

**ELIADIS, INC., et al., Defendants.**

No. 5:97CV3096.

United States District Court,
N.D. Ohio,
Eastern Division.

July 30, 1999.

**663**

## MEMORANDUM OPINION

DOWD, District Judge.

Before the Court are the parties' cross-motions for summary judgment (Doc. Nos. 37 and 38). For the reasons stated below, the Court finds that defendant's motion for summary judgment (Doc. No. 38) should be denied and that plaintiff's motion for summary judgment (Doc. No. 37) should be granted in part and denied in part.

## I. BACKGROUND

Plaintiff National Satellite Sports, Inc., brought this case under 47 U.S.C. § 605, alleging a violation of that statute by defendant, Time Warner Entertainment Co. Plaintiff had the exclusive license to transmit the December 14, 1996, "Bowe–Galota Boxing Match" ("the Event") to commercial establishments.[1] Plaintiff alleges that, while defendant had the authority to transmit the Event to residential customers, defendant did not have the right to transmit it to commercial customers. It is undisputed that defendant received the Event signal from a satellite, transmitted the Event to a commercial customer, the Melody Lane Lounge,[2] and charged the customer a residential rate for the transmission. Defendant claims that, at the time of the transmission, and unknown to defendant, the Melody Lane Lounge was improperly listed in defendant's records as being a residential customer.

Plaintiff seeks statutory damages in the amount of $7,700 under § 605(e)(3)(C)(i)(II) as the remedy for the loss of "the revenue which would have been derived from the delivery and exhibition of the Event to 'Melody Lane Lounge' and its patrons." It also seeks attorney fees and costs pursuant to

Michael D. Slodov, Javitch, Block, Eisen & Rathbone, Cleveland, OH, for National Satellite Sports, Inc.

John C. Weisensell, E. Marie Wheeler, Amer, Cunningham, Brennan, Akron, OH, for Time Warner Entertainment Co., L.P.

---

**1.** Defendant, in its "Supplemental Brief" on the issue of summary judgment, filed on February 12, 1999, raises an objection to plaintiff's alleged failure to provide evidence in support of plaintiff's claim that it had the exclusive right to transmit the Event to commercial establishments in Ohio. Defendant will not be heard to complain of this alleged failure at this late date, in light of its earlier

admission of that very assertion on the first page of its "Memorandum in Opposition to Plaintiff's Request to Disclose Discovery" (Doc. No. 30).

**2.** The Melody Lane Lounge was originally a named defendant in this case, but was termed from the lawsuit on June 9, 1998 (Docket No. 21).

§ 605(e)(3)(B)(iii). Additionally, plaintiff seeks statutory damages in the amount of $23,200 pursuant to § 605(e)(3)(C)(ii) as a discretionary increase due to the alleged willfulness of defendant's actions.[3] Defendant asserts that plaintiff has failed to state a claim under the statute, that plaintiff is not an "aggrieved person" within the meaning of the statute, that plaintiff's arguments are collaterally estopped, and that its actions were not willful.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. When a court considers a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). However, the adverse party may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts ... earlier deposition testimony." *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986) (citing *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir.1984)). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505.

## III. LAW

The applicable statute, 47 U.S.C. § 605, provides, in pertinent part:

**(a) Practices prohibited**

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the

---

**3.** Plaintiff has modified its damage claims somewhat. Plaintiff originally stated, in the Complaint, that it sought $10,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), $100,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), full costs of the action (including attorney fees), and any other relief this Court were to deem just and proper.

communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

■ Additionally, the statute discusses the available damages:

[ (e)(3) ] (C)(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;

(I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or

(II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, . . . .

(ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

Satellite signals constitute "radio" signals for purposes of this statute. *See U.S. v. One Macom Video Cipher II, SN A6J050073*, 985 F.2d 258, 260 (6th Cir. 1993).

## IV. THE PARTIES' POSITIONS

Defendant argues that it is entitled to summary judgment because: (1) the doctrine of collateral estoppel precludes plaintiff from litigating, in this case, the issue of whether it has a protected interest for which relief can be granted under § 605;[4] (2) plaintiff is not an "aggrieved" person within the meaning of § 605 and, therefore, cannot succeed in this action; and (3) plaintiff cannot demonstrate that defen-

---

**4.** According to defendant, this same legal issue was decided in defendant's favor in an-

other case in the Northern District in which the facts and legal issues were "identical."

dant "intercepted" the signal of the Event, and interception is a required element of a violation of § 605.

Plaintiff, on the other hand, argues that it is entitled to summary judgment because: (1) defendant has admitted facts that constitute a willful violation of § 605; and (2) plaintiff is an "aggrieved" person within the meaning of § 605. It also asserts that it is entitled to $30,800 in damages plus costs and attorney fees as a matter of law.

## V.  DISCUSSION

For the reasons contained in the following discussion, this Court finds that plaintiff's claim is not barred by the doctrine of collateral estoppel; that plaintiff is an aggrieved person within the meaning of § 605; that defendant's conduct violated § 605; and that the determination of the amount of damages, including whether plaintiff is entitled to additional damages for willfulness, must be left for the trier of fact. These conclusions necessarily mean that defendant will be liable for some amount in damages to plaintiff for its violation of § 605 and will be ordered to pay plaintiff's full costs, including reasonable attorney fees. *See* 47 U.S.C. § 605(e)(3)(B)(iii).

### A.  COLLATERAL ESTOPPEL

█ Defendant's assertion the plaintiff's claim is collaterally estopped by a prior determination in another case is not well-taken. Two of the requirements for the application of collateral estoppel, as conceded by defendant, are that there must have been a full and fair opportunity to litigate the issue and that determination of the issue in question must have been necessary of essential to the judgment in the prior action. *See Smith v. Sushka*, 117 F.3d 965, 973 (6th Cir.1997) (citing *Goodson v. McDonough Power Equipment, Inc.* (1983), 2 Ohio St.3d 193, 443 N.E.2d 978). Defendant asserts that the issue of "satellite piracy" was "plainly necessary to the final judgment" in a prior case captioned *National Satellite Sports, Inc. v. Lynstalder, Inc.*, No. 5:97CV2039 (N.D.Ohio).

Therefore, according to defendant, the "essential to the judgment" requirement is satisfied. This does not follow, however. Defendant does not (and, in fact, could not) argue that the general issue of "satellite piracy" is the issue collaterally estopped. Rather, defendant is arguing that, in the prior case, the court determined that National Satellite had no "proprietary interest" in a signal received and sent (allegedly inadvertently) by Time Warner to a commercial establishment, because it was physically distinct from the signal that National Satellite received and then sent to its contractually-authorized, commercial-establishment recipients. This is the issue that defendant claims is collaterally estopped.

Defendant has not demonstrated, as it must, that the determination of this particular issue was essential to the judgment in Lynstalder, supra. The court in that case first concluded, at the summary judgment stage, that National Satellite had failed to state a claim because it had entered into a contract, the terms of which specifically provided that National Satellite had no right to pursue a piracy action. Lynstalder, supra, Transcript of Oral Hearing on Defendant's Motion for Summary Judgment, July 13, 1998, 35–39 (Defendant's Motion for Summary Judgment, Exh. 5). The court further held that, "[e]ven considering [parol evidence purporting to negate that contractual provision]," National Satellite had failed to state a claim under § 605 because it had no proprietary interest in the allegedly intercepted communication—that is, the signal sent by the entity authorized to send it to residential customers only. *Id.* This second basis for the holding was not essential to the judgment, since, in the court's view, the contractual language clearly barred the action.

Regarding the alleged "full and fair opportunity to litigate" this issue, defendant states, simply, that:

A final judgment was rendered on the merits in the previous case after a full and fair opportunity to litigate. The case was decided on summary judgment

after the litigants presented in Court their motions and evidence.

Defendant points to nothing in the record to support this conclusion. This hardly satisfies defendant's burden of demonstrating to the Court that there was such a "full and fair opportunity to litigate" the issue of whether National Satellite had a proprietary interest in the signal allegedly intercepted. Defendant has failed to demonstrate that this issue is collaterally estopped.

### B. "AGGRIEVED" PERSON

■ Regarding the definition of an "aggrieved" person for purposes of § 605, the Court notes that the statute provides that "the term 'any person aggrieved' shall *include* any person with proprietary rights in the intercepted communication ..." See 47 U.S.C. § 605(d) (emphasis added). It does not state that *only* such persons are "aggrieved" for purposes of § 605. One need only look to the second part of this subsection to realize that the word "include" renders the subsequent words nonlimiting:

> [I]n the case of a violation of paragraph (4) of subsection (e) of this section, [the term 'any person aggrieved'] shall also include any person engaged in the lawful manufacture, distribution, or sale of equipment necessary to authorize or receive satellite cable programming.

Paragraph (4) of subsection (e) provides that:

> Any person who manufactures, assembles, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having

reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each device shall be deemed a separate violation.

No one could seriously argue that persons who are engaged solely in the *unlawful* manufacture or distribution of such equipment are thereby automatically immune from liability under § 605(e)(4). It stands to reason, therefore, that persons other than those with "proprietary rights in the intercepted communication" may also be able to state a claim under § 605.[5]

### C. VIOLATION OF § 605

■ Plaintiff argues that defendant violated the first and third sentences of § 605(a). Defendant argues that it did not "intercept" a signal in which plaintiff had an interest and, therefore, cannot be held liable under § 605(a). There can, however, be a violation of § 605(a) in the context of a cable television communication even if the violator receives a communication signal that it is legally entitled to receive, if it then diverts or sends the communication to an entity that is not entitled to the communication.[6] The first sentence of § 605(a) provides:

---

**5.** Furthermore, with all due respect to the *Lynstalder* court, this Court is not convinced that National Satellite did not have a proprietary interest in the communication of the Event sent by defendant to Melody Lane Lounge. For example, one might argue that, since plaintiff had the exclusive right to send the Event signal to commercial establishments, a proprietary interest of some sort on the part of plaintiff arose at the moment when defendant transmitted the Event to Melody Lane Lounge.

**6.** This Court is not unaware of holdings by the Sixth Circuit that a violation of § 605 requires *both* an interception and a divulgence of a protected communication, and that one authorized to receive the communication cannot have "intercepted" it. *See Smith v. Cincinnati Post & Times–Star*, 475 F.2d 740, 741 (6th Cir.1973), and *Bufalino v. Michigan Bell Telephone Co.*, 404 F.2d 1023, 1027 (6th Cir. 1968). Those cases, however, were decided before cable television became the subject of § 605 litigation and involved the issue of whether a party to a telephone conversation

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority.

This section has been interpreted as designed specifically to regulate the conduct of legitimate communications personnel with respect to the divulgence or publication of wire or radio transmissions. *See, e.g., Kingvision Pay Per View, Ltd. v. Duermeier,* 24 F.Supp.2d 1179, 1183 (D.Kan.1998); *Joe Hand Promotions, Inc. v. Rennard Street Enterprises, Inc.,* 954 F.Supp. 1046, 1052 (E.D.Pa.1997); *International Cablevision, Inc. v. Sykes,* 75 F.3d 123, at 131 n. 4 (2d Cir.1996); *National Basketball Assoc. v. Sports Team Analysis and Tracking Systems, Inc.,* 939 F.Supp. 1071, 1113 (S.D.N.Y.1996); *United States v. Norris,* 88 F.3d 462, 465 (7th

Cir.1996); and *International Cablevision, Inc. v. Noel,* 859 F.Supp. 69, 75 (W.D.N.Y. 1994). Defendant transmitted the Event to Melody Lane Lounge through an unauthorized channel of transmission (defendant was not authorized to transmit the Event to commercial establishments). Defendant also assisted Melody Lane Lounge in receiving the Event through an unauthorized channel of reception (Melody Lane Lounge was not authorized to receive the Event except by contract with plaintiff).

The third sentence of § 605(a) provides: No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

▮ Defendant assisted in the receiving of the Event by Melody Lane Lounge. No one disputes that defendant was "not entitled" to assist Melody Lane Lounge in that reception, or that Melody Lane Lounge was "not entitled" to that reception. Other courts have found commercial establishments to have violated the above provision of § 605 under similar circumstances. *See, e.g., Kingvision Pay Per View, Ltd. v. Williams,* 1 F.Supp.2d 1481 (S.D.Ga.1998) (commercial establishment that received a boxing match at the residential rate from satellite service provider and exhibited the match to its patrons, held liable under § 605 to owner of exclusive rights to dis-

can be liable under § 605 if that party divulges the contents of the conversation to another. This Court holds that those cases are easily distinguishable from the one at bar and do not necessarily require a decision in defendant's favor simply because the defendant did not physically receive an unauthorized signal, or because the physical signal sent by plaintiff was not the one received by Melody Lane Lounge. *See also Kingvision Pay Per View, Ltd. v. Williams* and *That's Entertainment, Inc. v. J.P.T., Inc., infra.* This Court also notes that other courts bound by Sixth Circuit law have more recently held, in similar cable piracy cases, that § 605 can be violated by *either* an interception *or* a divulgence of a

protected communication. *See, e.g., United States v. Westbrook,* 502 F.Supp. 588, 589 (E.D.Mich.1980); *Cox Cable Cleveland Area, Inc. v. King,* 582 F.Supp. 376, 379 (N.D.Ohio 1983). Finally, it has been suggested that one authorized to receive a cable television signal at one destination might be said to "intercept" it by diverting it to an unauthorized destination. *See Kingvision Pay Per View, Ltd. v. Duermeier,* 24 F.Supp.2d 1179, 1185 n. 3 (D.Kan.1998). Here, defendant was authorized to receive the signal and send it to residential customers, but then "diverted" it to Melody Lane Lounge, an unauthorized destination.

tribute the match to commercial establishments, even if the establishment did not "illegally intercept[ ]" the signal); *That's Entertainment, Inc. v. J.P.T., Inc.*, 843 F.Supp. 995 (D.Md.1993) (commercial establishment that diverted a cable signal of a boxing match from a residence to its business premises and exhibited the match to its patrons, held liable under § 605 to owner of exclusive rights to distribute the match to commercial establishments, whether or not there was an actual "interception" of the boxing match signal; court, however, concluded that there was an "interception" within the meaning of § 605 under the facts of the case). Defendant's assistance in the reception of the signal by Melody Lane Lounge, therefore, was also a violation of § 605. Furthermore, plaintiff suffered harm as a direct result of that violation. *See Kingvision Pay Per View, Ltd. v. Williams* and *That's Entertainment, Inc. v. J.P.T., Inc., supra.* The Court concludes, therefore, that defendant violated § 605 and is liable to plaintiff for damages, attorney fees, and costs. The amount of damages, however, cannot be determined as a matter of law at this stage because there are material fact issues that affect the amount of damages, including what support there is for the amount of statutory damages plaintiff is demanding and whether defendant's actions were willful.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Doc. No. 38) is DENIED and plaintiff's motion for summary judgment (Doc. No. 37) is GRANTED in part as to the issue of liability. The case will proceed toward trial on the issues relating to damages.

IT IS SO ORDERED.